King, J.
This is a proceeding to reverse the judgment of the court of common pleas of this county. The action was brought in the court of common pleas by John Luscombe against The National Malleable Castings Co. to recover damages which he claims to have sustained by reason of an injury to the fingers of one of his hands; that about January 25, 1893, as he alleges, he was in the employ of the company as a car,. *681 penter and joiner, and that about that time he was wrongfully ordered by his employer to work and operate a machine used by it, and known as a buzz plainer, to dress some long, thin and narrow strips of lumber; that it was a dangerous and difficult machine to operate, and he was not acquainted with or accustomed to its use; that he was ignorant of the danger that he incurred in operating it, and the defendant had negligently failed to inform him of its dangerous character, or to instruct him in its use, although he had informed the defendant that he did not know how to operate or run a machine of that nature, and that he did not want to operate it; that the defendant failed to provide proper and suitable rolls, guards, or other protection to the dangerous and exposed parts of the machine, in order to protect the operator from injury, and failed to provide suitable and proper tables, rests, benches or other supports to enable the plaintiff to properly and safely operate said machine; also that it required two persons to safely operate it, and the defendant failed to furnish him help, that it had 'been moved and was out of alignment with the driving shaft, to the knowledge of the defendant, and that he had ho knowledge of it. And all these he alleges were known to the defendant, or it might have know them; and that he did not know of the dangerous character of the machine, or the necessity for the safe guards and other appliances, or the necessity for rests, or the necessity for help or assistance; that without any fault on his part, but by reason of the negligence of the defendant, his hand was caught in the machine, and the first, second, and third fingers were crushed, and cut off.
These allegations of negligence were denied by the defendant, who also alleged that the plaintiff was guilty of contributory negligence. That was denied by the plaintiff.
These issues were tried to a jury. In the course of its history, the case was tried in the court of common pleas, a *682 verdict rendered for the'plaintiff^below, and that case brought to this court, and here argued and the verdict and judgment in it set aside, the cause remanded to the court of common pleas, and again tried; and it is the second judgment for the plaintiff below that this proceeding is instituted to reverse.
The errors that were found in the case before are not the same as those which are claimed to exist here. The errors assigned may be said to be, first, the introduction of improper evidence on the part of plaintiff below; and second, error of the court in its charge to the jury.
The improper evidence relied upon is the following: On page 40 of the record the witness, Henry Leech is inquired of as to a conversation which he had’ immediately after he had been injured in August before, with one Booth, who was the foreman in the shop of the defendant company, or who seemed to have a general charge of all carpenters. At the time when the plaintiff was injured, the defendant, a iron maufacturing company, had a carpenter shop in which it employed carpenters in its usual fund ordinary business, and also, engaged in the work of reconstructing or rebuild-in a portion of its factory, wdiichj had’|been destroyed previously. The plaintiff below was hired more particularly for work upon the buildings themselves. Booth was a foreman, who had general charge of the gangs of carpenters, as I understand it from the record, whether employed in the shop or out of doors upon the buildings. Leech had been hurt in some way and after he was injured he , had a c onversation with Booth, in which he told Booth how he was injured; or he said to him, as he says in his own testimony, “You see what I have done.” And Booth replied to him, “At the shop in Chicago they thro wed the belt off. They won’t let them run that machine — same kind oLmachine, ’ Then there was a motion to.strike out that answer, which was overruled, and an exception noted,
*683 This answer was not the statement of any fact proper to go to the jury, but was a mere statement by Booth, though he was foreman, that in some other place,or some other town, somebody would not let a machine of that kind run without a guard. He does not say without a guard, but that they would not let it run; they threw the belt off. He does not say who wouldn’t let it run, or who threw the belt off which prevented its running; but in Chicago they wouldn’t let a machine of that kind run. It is doubtful if there is enough in this statement alone, to authorize the setting aside of this verdict, although it undoubtedly was an erroneous answer, and ought not to have been permitted to go to the jury. But proceeding to page 50, there are more serious questions and objections. The witness J. J. Baird, who was an experienced workman in this kind of business, was asked these questions, to which there are exceptions.
“Q. Is it part of the ordinary duties of a carpenter and joiner to operate a machine of this kind?”
That is ojected to and excepted to, and the answer is:
“It is not, sir.’’
On page 61, the witness Campfield, who also was a machinist of some experience, and at the time of this trial was deputy state inspector of workshops, was asked questions like these:
“Q. State what knowledge a man would have as to the liability of a long thin strip like the one here present, to turn over, who had seen it operated six or eight times, assisting as a helper himself, but not having fed the machine before, nor having been told anything about it.’’
That was allowed to be answered over objection, and he answered:
“A. In my estimation,he would not know what would be the liability of the stick to turn. Q. State what liability •there would be? A. The liability is, he is liable to get into the knives. ’’
*684 Is it possible that a court is permitted to allow a witness to answer as to the state of another man’s mind or as to the state of his knowledge? Two classes of evidence are admissible; that which relates to the facts, and that which is given by men having special experience in questions of science, or skill with regard to subjects about which men of ordinary observation would not be expected to have but little, if any, knowledge. But has any man, however skilled or expert he may be, sufficient knowledge to enable him to say how much knowledge another man has as to the liability of a sixteen-foot strip, an inch ail a half wide and half an inch thick, to turn over ? It seems to me this is the most uncertain kind of testimony that could be submitted to a jury. And yet, the witness is asked to “state what liability there would be,” and the witness is permitted to answer, and his answer is: “The liability is, he is liable to get into the knives.” On page 63 of this record the same witness is asked:
“Q. What would a man who had not been .told anything about the danger of this machine, but who had seen it operated seven or eight times, and assisted that number of times as a helper, know about the dangers of it in operating it?”
That is objected to, and the objection overruled, and exception noted, and the witness answered that he wouldn’t know anything about it. How did the witness find that out? Plow did he know what the other man would know, from operating the machine seven or eight times, or assisting in its operation seven or eight twines? Plow could he l'ook into the mind of the plaintiff below, and tell how much ho knew, or how much he had learned; the evidence showing the fact to be that he had worked in and about that shop at that time nearly five months? All this is certainly erroneous.
On page 65 and 66 the same witness was examined further upon another subject. He was there asked to s^ate whether or not he had seen a guard for a machine like this in use. That is excepted to. He says: “Yes, sir. ”
*685 “Q. While the machine was being operated?” That is objected to, and he says, “yes, sir.”
“Q. State whether it operated successfully or not.”
And he answers, that “it did operate successfully; if it hadn’t they woudn’t have used it.”
“Q. What in your opinion, and from your experience and knowledge, is the practicability of a guard like this that was in use as you saw it at the Western Manufacturing Co?”
That is objected to.
“A. It is practical, and would prevent a great many accidents. ”
As to that testimony, I should say this it appeared at the time this witness gave his testimony, that he had been appointed deputy district inspector of workshops for this state in January, 1893 — the month in which the plaintiff below received his injury; that thereafter he went about his district inspecting the workshops therein, and it took him a year and a half to go over the district; that some time during the following spring, and certainly after the plaintiff was injured, while inspecting the workshops of the Western Manufacturing Co. of Toledo, he found a planer like the one upon which plaintiff was injured in operation, upon which a guard was used; and he swears he found no other in his district, which consists of counties in Northwestern Ohio, in which he found a great many — he does not give the number —of planers like this. The evidence further shows that this planer was a machine in common use in wood working factories. It could be used with almost any width or length of lumber; and you could take a strip an inch wide and run it through tbe machine, whether it was a foot or twenty feet long; or you could take a strip two feet wide, and run it through the machine, and make a perfect joint. It was a popular, easily worked machine for the work it was adapted to perform. But-one machine was found in Northwestern Ohio, and none at all any where else, where a guard was in *686 use; and the evidence was distinctly and clearly conflicting whether this guard was of any practical use. Mechanics who were witnesses in the ease testified, some of them, that they would not use it; and a mechanic who had used the machine at the Western Manufacturing Go’s shop, being called as a witness, said that he didn’t use it; he didn’t regard it as of any benefit at all.
Was it proper to submit that evidence to the jury? It seems to the court clearly not; the rule upon that subject being well settled both by the Supreme Court of Ohio, and all the other states, where the question has been raised, that an employer is not bound to furnish the latest appliances or the most approved style of machinery. He is to use ordinary care to select machinery that is fit and safe for the purpose to be accomplished. That is the extent of this obligation in that repect. This machine was manufactured by a reputable manufacturing company in Cincinnati. It was sold to the trade everywhere, and was in general use in this kind of shops. And at the time when this plaintiff was injured, but one machine had ever been discovered to which a guard had been attached; and that so far as the testimony shows, was not an attachment really of the manufacturer, but of some of the men in the shop, it being simply a piece of board attached to the bench of the planer. We think no foundation was laid for the admission of any testimony with reference to this guard, and that it was error in the court to admit it.
The other objections appear as to the charge of the court. Those to which I shall call attention are the 7th, 9th- and 10th exceptions to the charge, found onjpages 156 and 157 of the record. In the first of these — page 156 — the court said:
“When one enters the service of another, where dangerous machinery is to be operated as a result of the employment, he does not assume the risk of the safety*of the ma *687 chinery, unless he knows the danger, or unless it is so obvious that he will be assumed to know it.”
It is the danger,not the safety,which he does not assume, and then only such dangers as are not obvious or of which be had no knowledge, or of such as by the exercise of ordinary care he could not hare learned.
The 9th and 10th exceptions on page 157 are as follows:
“Now, since it is the duty of he master to use due diligence to see that the servant is not exposed to unnecessary risk (and here the exceptions begin), he is bound, before an employe is put in charge of dangerous machinery with which he is not acquainted, to instruct and qualify him or his duty; that is, where machinery is dangerous and difficult to operate, and the inexperience or incapacity, or other deficiency as a practical operator of such machinery on the part of the employe is known to the employer, it becomes his duty to exercise reasonable care and diligence in seeing that the employe is qualified for the duty which he undertakes to perr form.”
Is that quite a fair statement of the liability and obligation of an employer of labor? Is he bound not only to instruct but to qualify his employe? Is he bound to see, in the language of the court, or bound to know, which would be the same thing, that his employes are not only instructed, but that they are qualified to safely operate any machine in his factory? Does that obligation rest upon the employer? We think not. That is putting the rule stronger than any court has ever put it, and stronger than it ought to be given.
There is a rule upon that subject, .and I refer to a case or two that seem to me to be very much in point at this stage of the discussion. In 40 N. E. Rep. 180, there was a case decided which has not yet gone into the Massachusetts reports,in which the plaintiff was a man of twenty years of age, of ordinary intelligence and mental quickness. He testified that he had seen a hay cutting machine work about three, times before the day of the accident; that he was told on that *688 day to go and cut some hay, or take another man’s place who had been assisting in cutting it, and without any other authority he undertook to pull out some hay which had caught between the knives, and clogged; and in doing so, the knives revolving very rapidly, his hand was drawn in by the hay which he was undertaking to pull out, and was cut. The court say:
“The duty of an employer to give instructions to one about to work on dangerous machinery exists only when there are dangers in the employment of which he has or ought to have knowledge, and which he has reason to believe his employe does not know and will not discover in time to protect himself from injury. In the early cases the doctrine was applied in favor of boys. In favor of adults it should be applied with great caution. Where the elements of the danger are obvious to a person of average intelligence, using due care, it would be unreasonable to require an employer to warn his employe to avoid dangers which ordinary prudence ought to make him avoid without warning. The mere fact that he cannot tell the exact degree of the danger if the nature and character of it can easily be seen, is not enough to require warning and instruction to a man of full age and average intelligence. Something may properly be left to the instinct of self-preservation, and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved. ”
And the Supreme Court of Michigan said in a case reported in 58 N. W. Rep. — Mackin v. Alaska Refrigerator Co. — Where the plaintiff, a man of eighteen years of age, recovered a judgment for $5,000 for the loss of a hand which was mutilated by a buzz planer — a machine like this ■ — and it was shown that the plaintiff was engaged, not in working at or operating the buzz planer, but in piling up sticks that had been planed by it,- the negligence complained of being that the machine was not covered, and that plaintiff, a boy of eighteen years old, was not properly instructed ■ — the same as in this case- — -the court say:
*689 “The evidence conclusively showed that it was not usual or feasible to put a cover or screen over such planers, and, upon the hearing in this court, counsel for the plaintiff disavowed any claim based upon the insufficiency of the machine. The judge submitted the question to the jury, however, and this was error. It was urged that this question is not raised by counsel for the defendant, but the brief refutes the claim.
“Upon the second ground alleged the evidence is conflicting upon the subject of instruction, hence the inquiry must be whether the failure to give instruction was negligence. Plaintiff testified that he had worked in a pulp mill, and that he had been apprenticed to a plumber, for whom he had worked for some time, so that he had some knowidge of mo chanics, if not machinery. The machinery is one whoso working is apparent at a glance, and we have no hesitation in saying that a boy of eighteen should know that, if he got his hands upon the knives, they would get injured. Some prominence is given to the fact that this boy had been in the country less than a year at the time of the accident, and that he came from Liverpool; but, vre see nothing in these facts to affect the result, unless we are to hold that the law presumes such boys to be duller than those who have lived here longer, of come from some other locality. It does not appear from the evidence that there was a necessity for giving directions about the method of doing the work, and the most that could have been said to the boy was that ho must keep his hands away from the knives, or he would get injured' — -a fact so patent that a much younger boy should know it. ”
Now, taking these authorities and applying them to the instructions in this case, it will be seen how erroneous they are. They are not applicable to the case which the court had before it. Here was a case in which the testimony of the plaintiff himself shows that he was between thirty-five and forty years of age, that he had worked as a carpenter and joiner with edged tools and hand tools for twenty years; that he came into this employment in September, and worked until January 25; that during that time, according to his own story, he passed *690 and re-passed this machine almost everyday that he was there; that he had acted as an assistant in planing pieces of lumber with this planer eight or nine times, he says with one man, Mr. Cameron, and the evidence conclusively shows-that he had worked at it a great many more times with other men who were working about the factory; that it was the custom, which he knew or ought to have known, as the evidence discloses, that when it was necessary to have an assistant in the management of a piece of lumber, they were to ask any of the employes about there to assist them. On the day in question he was told to go and plane some window stops, and be quick about it- — hurry up; and he says he was told to use the planer. Conceding that was so, he went out and got a man by the name of Locey, to help him run some timber through the buzz saw. That being completed, Locey went back again to his work. Then he went around to Locey and asked him for the use of his bench to plane out this stuff by hand, and made the same request of another man. So that, if he had been told to use a planer, he was not regarding that injunction, but was calculating to plane it out by hand. He says that these men told him they wouldn’t let him have their benches. Thereupon he tried the planer alone, and got his fingers cut. He didn’t ask anybody to assist him; he didn’t call upon the foreman to send a man to assist him, but undertook to do the work alone, after he had let the man go who had assisted him in ripping out the stuff.
Is a charge such as that given by the court here applicable to that state of facts? Should the jury be told that an employer is bound to' see that his employe in qualified before he sets him at work? The evidence does not show that the foreman told him to do this work with the machine at all; but if he thought he had been so told, then there were other workmen who could be called upon to give assistance —there were twelve men working about there then — -whom *691 he never asked to help him. The evidence shows that he made no objection to the foreman, nor did he tell the foreman tliaf he was not qualified at that time, and did not know all about this machine. There is no evidence to show that the foreman might not well have supposed that this man knew all about that machine, and could have run it at that time, although on other occasions he had objected. We,therefore, hold these instructions to have been erroneous.
Smith & Baker, for plaintiff in error.
O. W. Nelson, I. N. Huntsberger, for defendant in error.
In addition to the statement I have made above, about the case made out by the plaintiff, I will say as the court said in the Michigan case, that any one could see at a glance how this machine worked, and that if he got his hand upon the knives he would get injured' — all that was necessary for him to know, his general knowledge, together with his observation of and experience with this machine in the four months he had worked there, must have informed him. It follows, therefore, that this verdict was not supported by sufficient evidence, and was contrary to law. And for all these reasons the judgment will be reversed.